NicholsoN, C. J.,
delivered the opinion of the Court.
This is an action of debt in the Circuit Court of Haywood county, on a promissory note in tlie following words:
$824.41. “ Twelve months after date, I promise to pay N. T. Perkins eight hundred and twenty-four 41-100 dollars, with interest from date. June 2d, 1862.
Thomas BoNd.”
Defendant put in two pleas: first, Nil debet; second, that the note sued on was given for Confederate money or notes. To the latter plea plaintiff’ replied, that if the note was given for Confederate money or notes, the same were of full and equal value to lawful money or Treasury notes of the United States, at the time and place of the contract. Issue was joined on the pleas.
Under the charge of the Circuit Judge, and upon the proof, the jury rendered a verdict in favor of the plaintiff for the face of the note, with interest. Prom the judgment on this verdict, the defendant has appealed in error to this Court.
*366 The proof shows that the contract was made at Brownsville, Tennessee, on the 2d of June, 1862. Fort Pillow fell into the hands of the United States forces June 3d, 1862; Memphis, June, 6th, and Jackson, June 8th, 1862. The note was given for Confederate money, loaned by plaintiff to defendant — the money was borrowed for the purpose of paying defendant’s taxes, and it was so used, though the taxes were remitted. In the spring of 1862, Confederate money passed very well — it circulated to some extent about June 2d, 1862 — it passed for taxes. After the fall of Fort Donelson, Confederate money depreciated, and still further, upon the fall of Corinth and Shiloh. Upon the taking of Jackson and Memphis, it went out of circulation. About June 1st, 1862, in Brownsville, the general circulating medium was Tennessee and Kentucky money — Confederate money was considerably depreciated.
The errors relied on here are assigned upon the charge of the Circuit Judge in connection with the proof. The charge is as follows: “But defendant insists by his second plea, that the consideration of the note was Confederate money, and that plaintiff cannot recover the same. You will look to the proof, and see whether the consideration of the note in question was Confederate money or not. If you find the consideration of the note was Confederate money, you will look to see under what circumstances the note was made, and the money borrowed. If you find from the proof, that the place *367 where the money was loaned, and the note executed, was, at 'the time, within the Confederate lines, and Confederate money was passing as common currency, and that the loan was not made directly in aid of the rebellion, but was • ah individual transaction between plaintiff and defendant, then plaintiff would be entitled to recover, and this, although Haywood county alone might have been within the Confederate lines,' and all the balance of the State within the Federal lines, if the note was executed in Haywood county. * * * If you find for the plaintiff you will give him the face of the note, and interest to date.”
The very able argument of the counsel for plaintiff in error assumes, correctly, that r while the courts have held that Confederate Treasury notes may be a good consideration for a contract, yet, since their issuance was in contravention of public policy, and illegal, therefore the rule applies only on certain well-defined conditions existing at the time of the contract.
The first condition specified is, that the contract must appear to have been made within the Confederate lines. The Circuit Judge recognized this as a condition, and so charged the jury, leaving them to determine, as a matter of fact, whether the contract was made within the Confederate lines or not. Proof was adduced on this question, showing that at the time of the contract, Fort Pillow, Memphis and Jackson were held by the Confederates — from which, looking to the geographical relation of *368 Brownsville to these places, which we have a right judicially to know, the jury might very well infer that Haywood county was at the time within the Confederate liues. It by no means follows, that because the Federal forces held Nashville, and that a Military Governor had been appointed and was acting for Tennessee — historical facts, of which we can take notice — therefore, that Haywood county was within the Federal military lines. These lines depended upon the actual occupation of and dominion over territory by military forces, and not upon the fact that a Federal Military Governor had posession of the capital of the State. We think the jury were justified in coming to the conclusion that Haywood county was within the Confederate lines at the time of the contract.
It is next insisted that there must have heen, at the time of the contract, an actual necessity for the use of Confederate money circulation, arising from the absence of other general circulating media, to justify the rule as to regarding such contracts as valid. We do not so understand the decisions on this subject. The courts have determined that the use of Confederate money by the citizens of the Confederate States, in their ordinary transactions, was allowable and excusable, amongst other reasons, because of the necessity for a currency, in the absence of the usual circulating ■ medium, produced by a state of war; but it was not intended to decide, that unless a party could show that there was . at the time an absolute necessity for the circulation *369 of Confederate money, be should be held guilty of having entered into an illegal contract. The preponderance of the proof is, that the main circulation at the time was Tennessee and Kentucky money, but that Confederate money, to a certain extent, was still the currency. In this state of things contracts made for borrowing or lending the Confederate currency could not be affected with illegality, from the simple fact that there was other currency more abundant than that of the Confederate States.
In the third place, it is said that the contract must not have been made with a view to afford direct aid and sustenance to the Confederate Government or its forces, otherwise the contract would be illegal. This is a correct statement of the rule, and it was so stated, substantially, by the Circuit Judge. But it is argued that the - defendant borrowed the Confederate -money to pay his taxes to the Confederate Government, and that plaintiff, knowing the purpose with which the money was borrowed, was guilty of illegality in making the loan. ¥e held in the case of Naff v. Crawford, 1 Heis., 111, and in several cases at the next term at Nashville, that the mere knowledge that the money would be used for an illegal purpose would not affect the right of the party to recover, unless it was his object and design that the money should be so used, with the view on his part of aiding-the rebellion. The Circuit Judge submitted this question of fact to the jury, and, upon the proof, *370 tbey found tbat the plaintiff was guilty of nothing illegal in making the loan. We think the proof sustains that finding.
We find no error in the charge of the Circuit Judge, nor do we think there is any such preponderance of evidence against the verdict as to justify ns in reversing it. We therefore, affirm the judgment.